#25085-a-DG

**2009 SD 53**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

METROPOLITAN LIFE INSURANCE COMPANY;
METROPOLITAN INSURANCE & ANNUITY
COMPANY; NEW ENGLAND LIFE INSURANCE
COMPANY; METLIFE INVESTORS USA
INSURANCE COMPANY; GENERAL AMERICAN
LIFE INSURANCE COMPANY; PARAGON LIFE
INSURANCE COMPANY; METLIFE INVESTORS
INSURANCE COMPANY; METROPOLITAN
PROPERTY & CASUALTY INSURANCE
COMPANY; METROPOLITAN GROUP PROPERTY
& CASUALTY COMPANY; ECONOMY PREMIER
ASSURANCE COMPANY; and METROPOLITAN
DIRECT PROPERTY & CASUALTY
INSURANCE COMPANY,                           Plaintiffs and Appellants,

v.

PAUL KINSMAN, Secretary of the South
Dakota Department of Revenue and
Regulation; MERLE SCHEIBER, Director
of the South Dakota Division of Insurance
and the STATE OF SOUTH DAKOTA,              Defendants and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE KATHLEEN F. TRANDAHL
Judge

\* \* \* \*

CONSIDERED ON BRIEFS
ON MAY 26, 2009

OPINION FILED **07/01/09**

RONALD G. SCHMIDT of
Schmidt, Schroyer, Moreno,
  Lee & Bachand, PC
Rapid City, South Dakota             Attorneys for plaintiffs
and appellants.


TIMOTHY M. GEBHART of
Davenport, Evans, Hurwitz and Smith, LLP
Sioux Falls, South Dakota          Attorneys for defendants
and appellees.

#25085

GILBERTSON, Chief Justice

[¶1.]        In early 1981, Metropolitan Life and other foreign insurance

companies (collectively MetLife) notified the South Dakota Department of Revenue

and Regulation that they believed that certain provisions of the tax code were

unconstitutional and that they were paying these taxes in protest.  At an

administrative hearing on this matter, MetLife's claims were found to be barred due

to its failure to comply with procedural notice requirements in the "protest and suit"

tax statutes.

[¶2.]        In 2004, MetLife sought to revive its claims and appealed from the

holding of the administrative hearing.  Without considering other preliminary

matters, the circuit court ruled that the taxing provisions were unconstitutional.

On appeal to this Court, the circuit court was reversed and the matter remanded.

This Court concluded that the preliminary matters had not been resolved by the

circuit court, thus rendering the constitutionality issue non-justiciable.  On remand,

the circuit court granted summary judgment against MetLife on numerous bases.

MetLife appeals.  We affirm.

## BACKGROUND

[¶3.]        This appeal arises from the remanded proceedings held as a result of

Metropolitan Life Ins. Co., et al. v. Kinsman, 2008 SD 24, 747 NW2d 653 (*MetLife

I*).  The underlying factual circumstances are identical.

> Metropolitan Life Insurance Company, et al. (MetLife) brought
> suit against the Secretary of the South Dakota Department of
> Revenue and Regulation, the Director of the South Dakota
> Division of Insurance, and the State of South Dakota
> (collectively the State or South Dakota), asserting that the
> State's tax structure on insurance premiums and annuity

-1-

considerations has been and is unconstitutional. According to MetLife, from 1970 to the present, SDCL 10-44-2 and SDCL 10-44-4 through SDCL 10-44-6 violate the equal protection clause of the United States and South Dakota constitutions.

In 1981, MetLife filed an administrative claim for a refund of its premium taxes paid. The claim was denied because of MetLife's failure to comply with certain statutory requirements. The parties agreed to stay all appeals while the United States Supreme Court considered the constitutionality of state insurance tax structures. The Supreme Court answered the question in 1982, but the parties continued to agree to stay all appeals. Ultimately, in 2004, on appeal to the circuit court, MetLife's administrative claim was consolidated with its constitutional challenge. The State and MetLife stipulated that the circuit court should only consider whether South Dakota's insurance premium and annuity tax structure violated the equal protection clause in the constitutions of the United States and South Dakota. After a trial to the court in 2007, findings of fact and conclusions of law and a judgment were entered declaring SDCL 10-44-2, and SDCL 10-44-4 through SDCL 10-44-6 unconstitutional from 1970 to the present.

*Id.* ¶¶2-3, 747 NW2d at 655. As to the tax payments made from 1970 to 1981, this Court reversed and remanded to the circuit court. The Court held that, as presented, the constitutionality of these statutes was non-justiciable. *Id.* ¶10, 747 NW2d at 658. The Court observed, "[i]f MetLife fails to overcome all preliminary issues yet to be decided by the circuit court, its constitutional challenge may never come before us." *Id.*

[¶4.]    On remand, the circuit court considered these preliminary issues and granted the State's motion for summary judgment on the bases of non-compliance with SDCL 10-27-2, SDCL Ch. 10-55, sovereign immunity, mootness, and laches. MetLife appeals.

## STANDARD OF REVIEW

[¶5.]    Our standard of review of a circuit court's grant of summary judgment

is well settled:

> [W]e must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

Wojewski v. Rapid City Reg'l Hosp., Inc., 2007 SD 33, ¶12, 730 NW2d 626, 631

(quoting Read v. McKennan Hosp., 2000 SD 66, ¶8, 610 NW2d 782, 784) (additional

citations omitted).

## ISSUE

Whether the grant of summary judgment was proper in this case.[1]

---

1.    The issue statement has been rephrased. MetLife presents a variety of arguments to show that its declaratory judgment action is a viable claim. Many of these arguments simply address the constitutionality of the tax statutes, rather than the preliminary issues remanded to the circuit court by *MetLife I.* Because that case held that the preliminary matters must be resolved before the constitutional claims are justiciable, some of MetLife's arguments simply seek to circumvent or retry the holding of *MetLife I.* Those arguments are premature and are not considered in this opinion.

    For some of MetLife's other arguments to succeed, such as the mootness issue, this Court would be required to overturn the holding in *MetLife I* that found the 1982 tax revisions constitutional. *See MetLife I,* 2008 SD 24, ¶21, 747 NW2d at 661. MetLife recognizes this requirement, but only directly addresses the issue by way of a footnote. (Appellant's Br. 35-36, n6.) This Court denied MetLife's petition for rehearing on this matter.

**ANALYSIS**

[¶6.]      MetLife presents a variety of arguments that the grant of summary judgment was inappropriate.  However, many of these arguments do not address the "preliminary matters" which provided the basis of the circuit court's grant of summary judgment.  Instead, MetLife focuses on its request to have the taxing scheme declared unconstitutional.  MetLife suggests that its claims have two aspects.  First, as an appeal from the administrative proceeding.  Second, as a constitutional challenge to the taxing statutes in effect from 1970-1981.

*Appeal from the Administrative Proceeding*

[¶7.]      MetLife's claims arise as an appeal from the findings of fact and conclusions of law resulting from the 1981 administrative decision.  MetLife's claims were dismissed because it was concluded:

> IV.  That [MetLife's] claims for refund of taxes paid in South Dakota for the years 1970 through 1980, inclusive, are barred by its failure to comply with the requirements of SDCL 10-27-2.
> V.  That [MetLife's] claims for refund of taxes paid prior to March 19, 1981, is barred by its failure to comply with SDCL Ch. 10-55.

(Findings of Fact, Conclusions of Law, and Order Op., Dated March 8, 1982.)  In essence, the administrative determination concluded that MetLife had not properly availed itself to the remedies for tax refunds provided by these "protest and suit" statutes.

[¶8.]      SDCL 10-27-2 provides:

> *Any* person against whom *any* tax is levied or who may be required to pay the same, who pays the same *under protest* to the treasurer authorized to collect the same, *giving notice at the time of payment* of the reasons for such protest may, at any time

> within *thirty days thereafter*, commence an action against such treasurer for the recovery thereof in any court of competent jurisdiction, and if the court determines that the same was wrongfully collected, in whole or in part, for any reason going to the merits of the tax, it shall enter judgment accordingly, and such judgment shall be paid in preference to any other claim against the county, upon the final determination of the action; and the pro rata share of the money so refunded shall be charged to the state and each taxing district which may have received any part of such tax. The right of appeal shall exist for both parties as in other civil actions.

(Emphasis added.)

[¶9.]     MetLife argued to the circuit court that "[t]here was no requirement to pay premium taxes under a written Notice of Protest as a condition precedent to the filing of a refund claim prior to the effective date of Session Laws 1981, Ch. 10-55, and *MetLife did not pay its premium taxes for tax years 1970 through 1980 under any written Notice of Protest*." (MetLife's Br. in Supp. of Mot. on Remand for Summ. J. 11 (emphasis added))

[¶10.]     The emphasized section in the passage above expressly concedes that MetLife had not timely availed itself of the remedies contained in SDCL 10-27-2. The language of this statute has existed, as written, since the Revised Code of 1919, § 6826.[2] As a matter of an appeal from the administrative determination, MetLife's "no conditions precedent" argument is without merit.

[¶11.]     The circuit court also found that MetLife did not comply with the procedural requirements of Ch. 10-55. For taxes *paid* from March 19, 1981, until June 30, 1982, including some taxes *incurred* in late 1980, SDCL 10-55-3 required a

---

2.     The predecessor statute, SL 1915, Ch. 289, § 1, had slightly different language.

notice of protest that "shall be in writing and shall accompany the payment of the tax." SDCL 10-55-4 required service of a petition upon the agency within thirty days of such a notice. The circuit court found that MetLife failed to comply with these statutorily prescribed procedural requirements for payments made during this period. MetLife has not challenged this finding or asserted that it complied with these procedures. Instead, it argues that its compliance with these statutes is irrelevant to its declaratory judgment claim, and, if the tax scheme is declared unconstitutional, such procedural barriers should not impede a refund. This argument is considered in the next section of this opinion. Because no challenge has been raised as to the timeliness of compliance, any challenge to this finding has been abandoned. Ray v. Downes, 1998 SD 40, ¶8, 576 NW2d 896, 898 ("[Plaintiff], however, has failed to brief this issue and therefore we need not consider it because '[a]n assignment of error not briefed and argued is deemed abandoned.'") (quoting State v. Macy, 403 NW2d 743, 745 (SD 1987)).

[¶12.]     The circuit court did not err by upholding the administrative ruling and granting summary judgment on MetLife's failure to comply with the procedural requirements.

*Declaratory Judgment as a Separate Action*

[¶13.]     MetLife asserts that its declaratory judgment claims should not have been subject to summary judgment because it does not request a refund of taxes paid, but only to have the tax statutes in effect from 1970 to 1981 declared unconstitutional. Therefore, it argues, the procedural requirements of SDCL 10-27-2 and SDCL Ch. 10-55 are irrelevant to these claims.

[¶14.] MetLife goes to great lengths to suggest that it requests no refund as a result of its declaratory judgment action. However, MetLife's filings to the circuit court and the Appellant's Brief to this Court belie this position and its intent to use such a declaration to permit a later refund. (*See* Am. Compl., Count III ¶57 (Seeking a declaratory judgment on the basis of the SD Constitution, seeking "such other and further relief as the Court may deem just and proper"); Count IV ¶59 (Same, United States Constitution); Count V ¶61 (Protest and Suit, stating "Plaintiffs are aggrieved . . . and are entitled to refunds thereof together with interest thereon. . ." and "if the relevant [taxes] are declared unconstitutional pursuant to Plaintiffs' third and/or fourth causes of action, Plaintiffs pray for the judgment of this Court for the refund of their premium taxes pursuant to the protest and suit statutes. . ."); MetLife's Mot. on Remand for Summ. J. ¶35 (". . . MetLife respectfully petitions this Court pursuant to SDCL 21-24-12 for further relief in the form of tax refunds . . ."))

[¶15.] MetLife attempts to liken its claims to those of the plaintiffs in *Dakota Systems, Inc. v. Viken*, 2005 SD 27, 694 NW2d 23, and *Dan Nelson Automotive, Inc. v. Viken,* 2005 SD 109, 706 NW2d 239. It maintains that its complaint was "essentially identical" to Dakota Systems'. However, the plaintiff in *Dakota Systems* had complied with the "protest and suit" statutes of SDCL 10-27-2 in seeking a refund and had not requested a refund pursuant to its declaratory judgment claim. 2005 SD 27, ¶3, 694 NW2d at 26. Unlike the plaintiff in *Dan Nelson*, who "only sought a *prospective interpretation* of the excise tax statutes" and did not seek a refund, MetLife seeks a *retrospective negation* of these statutes and

also suggests that a refund is available to it in a second, subsequent action. *See*

*Dan Nelson,* 2005 SD 109, ¶¶15-16, 706 NW2d at 244-45 (emphasis added).

[¶16.] MetLife argues that a successful declaratory judgment action allows

for a refund of taxes, based on the Due Process Clause. MetLife relies on *McKesson*

*Corp. v. Div of Alcoholic Beverages & Tobacco, Dep't of Business Regulation* for this

proposition. 496 US 18, 110 SCt 2238, 110 LEd2d 17 (1990). In *McKesson,* the

Supreme Court assumed that the plaintiff had properly complied with statutory

requisites for preserving a claim for a refund and noted that the taxes were "timely

challenged," before it granted relief to the plaintiffs. *See id.,* 496 US at 24-25, 110

SCt at 2243-44. Here, MetLife had a meaningful opportunity to challenge the

payments at the time they were made, but did not comply with the statutorily

required procedures. MetLife simply did not "pay under protest" as did the

plaintiffs in *McKesson* or any of the cases discussed in that opinion. Therefore, the

*McKesson* authority is inapplicable.[3]

[¶17.] The *McKesson* Court expressly addressed the validity of statutory

limitations on tax refunds:

> The State might, for example, provide by statute that refunds
> will be available only to those taxpayers paying under protest
> or providing some other timely notice of complaint; . . . enforce
> relatively short statutes of limitations applicable to such
> actions; FN 28 . . . such that the State can predict with greater
> accuracy the availability of undisputed treasury funds. The
> State's ability in the future to invoke such procedural
> protections suffices to secure the State's interest in stable fiscal
> planning when weighed against its constitutional obligation to
> provide relief for an unlawful tax.

---

3. Reich v. Collins, 513 US 106, 115 SCt 547, 130 LEd2d 454 (1994), also cited
by MetLife, is inapplicable for the same reasons.

> FN 28: See *Ward v. Love County Board of Comm'rs,* 253 US [17], 25, 40 SCt [419,] 422 (recognizing refund claim could be barred if there was "any valid local [limitations] law in force when the claim was filed") . . .

*McKesson,* 496 US at 45, 110 SCt at 2254-55. *See also id.,* 496 US at 50, 110 SCt at 2257. Such methods were not utilized by the defendant State in *McKesson*.

[¶18.]        South Dakota *has* enacted such procedural limitations. As recognized by the Court in *Agar School Dist. No. 58-1 v. McGee*,

> In *Lick v. Dahl,* 285 NW2d 594, 599 (SD 1979), this Court unanimously held:
>
>> There are two *exclusive* methods by which an aggrieved taxpayer may seek recovery for alleged illegal taxes paid. They are the Refund and Abatement Statute, SDCL 10-18-1, and the Protest and Suit Statute, SDCL 10-27-2.
>>
>> Recently in discussing the scope of SDCL 10-27-2, we stated that "[w]hile we agree that this does indeed place an additional burden on a taxpayer seeking recovery and repayment of overpaid taxes, we do not believe that the statutes provide for any other remedy." Riverview Prop. v. Bd. of Equalization*,* 439 NW2d 820, 823 (SD 1989).

Agar School Dist. No. 58-1 v. McGee, 1997 SD 31, ¶14, 561 NW2d 318, 322. To the extent *Arneson v. Baker*, 76 SD 262, 77 NW2d 325 (1956), suggests that a declaratory judgment action permits a refund of taxes in the absence of one of these "exclusive" methods, it has been overruled by *Lick v. Dahl. See Agar,* 1997 SD 31, ¶¶16-17, 561 NW2d at 323. Therefore, no refund is available to MetLife via its declaratory judgment claims.

[¶19.]        As the exclusive methods for receiving a refund were not complied with, no refund is available to MetLife. Because no refund is available to MetLife, the declaratory judgment claims seek only the bare relief of having the tax statutes

declared unconstitutional.  As the tax statutes have been ineffective for nearly thirty years, there is no live or ongoing controversy.  Thus, in the absence of a live controversy, these claims are moot.  The circuit court properly granted summary judgment on this basis.

[¶20.]      MetLife has failed to satisfy the preliminary matters concerning the justiciability of the constitutional question; therefore, we do not reach the constitutionality of the tax scheme.

[¶21.]      Affirmed.

[¶22.]      KONENKAMP, ZINTER, and SEVERSON, Justices, concur.

[¶23.]      MEIERHENRY, Justice, deeming herself disqualified, did not participate.